IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY R. RENTH, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| vs. | )    Case No. 18-cv-2116-DWD |
| | ) |
| D. SPROUL, | ) |
| | ) |
|     Respondent. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Petitioner Anthony R. Renth filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to challenge the imposition of disciplinary sanctions against him; specifically, the loss of forty-one (41) days of good conduct credit against his sentence (Doc. 1). Respondent filed a Response to the Petition (Doc. 10) and Renth replied (Doc. 12). For the following reasons, Renth's Petition will be denied.

### Background

Renth was convicted in the Southern District of Illinois for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846 (Doc. 10-1). On September 27, 2013, he was sentenced to 204 months in prison. The disciplinary incident that gave rise to this action occurred while Renth was incarcerated at Marion (Doc. 1, p. 18; Doc. 10-4). As of the date of Respondent's Response, Renth's projected release date was calculated to be April 16, 2024 (Doc. 10-2). His sentence is set to fully expire on June 6, 2025 (Doc. 10-2).

1

Since filing his Petition, Renth has transferred and is now incarcerated at FCI-Manchester, which is located outside this District (Doc. 18; Doc. 19). However, the Court retains jurisdiction over this matter because jurisdiction was proper in this District when Renth filed his petition. *Ross v. Mebane*, 536 F.2d 1199, 1201 (7th Cir. 1976) (Jurisdiction over a 28 U.S.C. § 2241 petition "is determined at the time the petition is filed" even if an inmate is subsequently transferred); *in accord Evans v. Romine*, 182 F.3d 921 n.1 (7th Cir. 1999). Respondent also waived any venue and personal jurisdiction defenses (Doc. 19).

On April 9, 2018, while at Marion, Officer D. Huggins conducted a search of Renth's prison cell (Doc. 1, p. 18; Doc. 10-4). Renth was the only inmate assigned to his cell and had been housed there since September 15, 2015 (*Id.*). During Huggins' search, he removed the cover of the light switch located above Renth's bunk and found a small plastic bag (*Id.*). The plastic bag contained a substance later identified by Marion's Chief Pharmacist as Suboxone 8mg/2mg, which is a CIII scheduled medication that Renth had not been prescribed (*Id.*). The incident report was submitted for a disciplinary hearing as a violation of Prohibited Act 113 (*Id.*), which, in relevant part, prohibits the possession of drugs which are not prescribed for the individual by the medical staff. 28 C.R.F. § 541.3 (Table 1). Renth received a copy of the incident report on April 10, 2018 (Doc. 1, pp. 2, 15), and was advised of his rights on April 11, 2018 (Doc. 1, pp. 12-13, 15). Renth elected not to have the assistance of a staff representative at his hearing, and further chose not to call any witnesses or present any evidence at the hearing (Doc. 1, pp. 2, 12-13, 15-16).

The disciplinary hearing was held on April 17, 2018 (Doc. 1, p. 15). The Disciplinary Hearing Officer ("DHO") found "some evidence" that Renth committed the

prohibited act, and reduced Renth's good conduct time by 41 days (Doc. 1, pp. 16-17). In making his decision, the DHO considered the facts presented in Officer Huggins' Incident Report; the memorandum of Marion Chief Pharmacist Clayton identifying the substance as contraband; photographs of the incident; and Renth's statement (1) denying that the substance was his, and (2) arguing that an unknown person placed the substance in his cell (Doc. 1, pp. 15-16). Following the disciplinary hearing, Renth requested to view the video tape surveillance of the incident. Renth first requested to review the video tapes outside his cell on April 20, 2018, and then renewed his requests on April 24, 2018, May 6, 2018, and May 11, 2018 (Doc. 1, pp. 19-21). Renth received a written copy of the DHO report on May 4, 2018 (Doc. 1, p. 17). Renth appealed the DHO decision, and his appeal was denied on September 5, 2018 (Doc. 1, p. 29).

## **Grounds for Habeas Relief**

Renth raises two concerns about the evidence presented at his disciplinary hearing. First, Renth claims the DHO erred by not examining potentially exculpatory video surveillance evidence, which Renth argues would have supported his assertion that he was "set up" (Doc. 1; Doc. 12). Renth also questions the credibility of the pharmacist's identification of the substance, claiming that the substance had never been submitted for chemical testing (Doc. 1). Respondent answers noting that Renth did not present these arguments at the disciplinary hearing, and therefore waived any opportunity to object to the evidence now (Doc. 10). In the alternative, Respondent notes that there was sufficient evidence presented at the hearing to support the decision, and Marion was not required to review the video surveillance footage or submit the substance for lab testing (*Id.*).

In his reply, Renth concedes that he did not request to review the security tape before the disciplinary hearing (Doc. 1, p. 3). He also concedes that he did not present arguments concerning the security tape or chemical testing of the substance to the DHO during the hearing (*Id.*). Instead, Renth claims that he was not aware of Marion's obligation to provide him with exculpatory evidence and/or his rights to request access to the video footage prior to his hearing because he did not have access to the law library until after the hearing was over (Doc. 12, p. 4). Renth argues that he was prejudiced by not having access to the law library because he was unable to timely learn of his ability to request the preservation of the video surveillance tape or otherwise prepare for his defense (*Id.*). Renth also argues that without the video surveillance evidence and a chemical toxicology report, the DHO did not have reliable information to meet the "some evidence" standard (Doc. 1, p. 7; Doc. 12).

## **Legal Standard**

Inmates may challenge the loss of good conduct credit pursuant to 28 U.S.C. § 2241. *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Because Renth has a liberty interest in earned good time credit, he was entitled to due process before losing them. *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Hudson v. Knight*, 751 Fed. Appx. 897, 899 (7th Cir. 2018). "In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by 'some evidence' in the record." *Piggie*, 344 F.3d at 677 (internal citations omitted); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

The findings of the disciplinary hearing officer must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 447 (1985); *see also Piggie*, 344 F.3d at 677. The "some evidence" standard is a low bar, which the Seventh Circuit has described as a "meager threshold." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends"). The Court does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Nor does the Court "assess the comparative weight of the evidence underlying the disciplinary board's decision." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

Instead, the "relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* (quoting Hill, 472 U.S. at 455-56 (emphasis in original). The evidence need not be sufficient to logically exclude any result except the one reached by the prison decision maker. *Viens v. Daniels*, 871 F. 2d 1328, 1334-35 (7th Cir. 1989). As such, this Court can overturn the decision "only if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Further, only evidence that was presented to the hearing officer is relevant to the determination of whether there was "some evidence." *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992).

## Analysis

Renth has not established that he was denied due process in connection with the disciplinary proceedings. Renth's Petition concerns his due process right to receive material exculpatory evidence prior to his disciplinary hearing. Renth argues that he was

5

denied due process because Marion did not present potentially exculpatory evidence at the hearing, such as the security footage from outside his cell or a full chemical toxicology report of the substance. Renth further argues that he was otherwise unaware that he could request access to certain evidence because he did not have access to the law library prior so to fully understand his potential rights and defenses. Renth alleges he was prejudiced by not reviewing the surveillance video evidence or having a toxicology report of the substance, which he claims would have shown an unknown person placing the substance in his cell and/or that the substance was not contraband. These claims are subject to harmless error. See *Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (applying harmless error analysis to due process claim); *Piggie v. Cotton*, 344 F.3d 674, 678-80 (7th Cir. 2003) (violation of prisoner's right to call witness in disciplinary hearing was harmless).

While it is unfortunate that Renth does not feel he had adequate opportunity to prepare for his disciplinary hearing, this failure does not amount to a due process violation when Renth affirmatively declined the opportunity to present evidence prior to and at the hearing. Procedural due process "requires that prisoners receive access to exculpatory evidence, including video recordings, 'unless its disclosure would unduly threaten institutional concerns.'" *Hudson*, 751 Fed. Appx. at 899; *Piggie*, 344 F.3d at 678 (7th Cir. 2003); *Campbell v. Henman*, 751 Fed. Appx. 897, 1215 (7th Cir. 1991). However, if a prisoner fails to request access to a surveillance tape prior to or at their disciplinary hearing, there is no due process violation if the disciplinary officer does not consider or review the surveillance video. *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002) (relying

6

on *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (due process does not require "the consideration of evidence that could have been but was not presented at the hearing")); *Mayers v. Anderson*, 93 F.Supp.2d 962, 965-66 (N.D. Ind. 2000) ("[*If* petitioner] made a timely request to have the conduct adjustment board consider this [video] evidence, the court concludes that he was entitled to have the board either consider the videotape or state on the record why it would not review the tape.") (emphasis supplied).

Renth acknowledged that he was informed of his rights to present evidence and witnesses at the hearing. He was further informed that he could receive assistance from a staff representative at the hearing. However, instead of availing himself to either, Renth specifically elected not to present evidence at the hearing and further declined to have assistance from a staff representative. Renth later admitted that he never requested access to the security video and never requested that a toxicology report be completed prior to or at his disciplinary hearing (Doc. 12, p. 4). Although Renth is correct that a failure to review potentially exculpatory evidence could arise to a due process violation, the Seventh Circuit has clarified that due process does not require a disciplinary officer to consider or review evidence that was never requested by the prisoner. *Piggie*, 277 F.3d at 925; *McPherson*, 188 F.3d at 767. Nor is a chemical analysis required to prove the identity of suspected controlled substances. *Burks-Bey v. Vannatta*, 130 Fed.Appx. 46, 47 (7th Cir. 2005) (relying on *United States v. Sanapow*, 366 F.3d 492, 496 (7th Cir. 2004) and *United States v. Pigee*, 197 F.3d 879, 890 (7th Cir. 1999).

Beyond Renth's conjecture, there is nothing in the record to suggest that the video security footage contained exculpatory evidence. Renth speculates that the tape would

have shown another person entering his cell without permission. However, in his response, Respondent submitted the Declaration of Daniel Huggins who stated that he reviewed portions of the videotape outside Renth's cell and observed no inmates other than Renth entering his cell during the three-hour period prior to Huggins' search of Renth's cell on April 9, 2018 (Doc. 10-10, ¶ 7). According to Huggins' account, therefore, the contents of the video were not exculpatory at all. *See Shroyer v. Cotton*, 80 Fed.Appx. 481, 484 (7th Cir. 2003) (no due process violation where inmate was not given access to videotape which was not exculpatory). Based on these facts, and considering that Renth never requested to review the video, and the DHO never reviewed the video, any failure to present the video at Renth's disciplinary hearing amounted to harmless error and does not rise to the level of a due process violation that would upend the disciplinary action.

Moreover, even if the video had shown other persons entering or leaving Renth's cell without permission, any error in not examining the tape is also harmless because Renth was responsible for keeping his cell area free of contraband and constructive possession of contraband is sufficient for finding "some evidence" of guilt. *Hamilton v. O'Leary*, 976 F.2d 341, 345-46 (7th Cir. 1992) (finding that constructive possession supported finding that prisoner possessed weapons even though at least three other prisoners also had access to his cell where the weapons were found); *see also Tweedy v. Vannatta*, 101 Fed.Appx. 158, 159-60 (7th Cir. 2004) (relying on *Hamilton*, 976 F.2d 345-46) ("contraband may be constructively possessed jointly with others"); *in accord United States v. Richardson*, 208 F.3d 626, 632 (7th Cir. 2000) ("Constructive possession exists where the

8

evidence demonstrates ownership, dominion, authority, or control. Constructive possession may be sole or joint.") (internal quotations and citations omitted).

Further, Renth's arguments that he was unaware of his ability to request certain evidence or present certain arguments because he did not have access to the prison's electronic law library prior to his disciplinary hearing do not rise to the level of a due process violation. A prison system is not required to provide unlimited access to a law library, even for *pro se* litigants. *See Martin v Davies*, 917 F. 2d 336, 340 (7th Cir. 1990); *in accord Pratt v. Tarr*, 464 F.3d 730, 732 (7th Cir. 2006) (relying on *Marshall v. Knight*, 445 F.3d 965 (7th Cir. 2006) ("the mere denial of access to a prison library . . . is not itself a violation of a prisoner's rights."). Renth also failed to state whether he requested access to the law library prior to or during his hearing, or that he made such requests and was denied.

Finally, Renth's statement of ignorance of his ability to present evidence is further diminished by his receipt of his rights in writing on April 13, 2018, four days before his disciplinary hearing (Doc. 1 at p. 31). The notice specifically stated that Renth would have the right "to present documentary evidence in [*sic*] your behalf, provided institutional safety would not be jeopardized" (*Id*.at ¶ 3). Such statement provided Renth with notice that he could present evidence on his behalf. Thereafter, Renth had four days request access to the relevant evidence or access to the library prior to his disciplinary hearing. Renth proffers no explanation for why he failed to request this evidence or present these arguments to the DHO at his hearing. Accordingly, because Renth failed to request access to the video evidence and failed to question the toxicology memorandum submitted by Marion's Chief Pharmacist, prior to or at his disciplinary

9

hearing, Renth was not denied due process, and he cannot now demand a new hearing based upon evidence that was available to him prior to the hearing. *Piggie*, 277 F.3d at 925; *McPherson*, 188 F.3d at 767.

Finding no due process violation, the Court next determines whether there was "some evidence" to support the disciplinary decision. Renth never denied that the substance was found in his cell. This presence alone is enough to constitute a violation of prison rules. *See generally, Santonio House v. Daniels*, 637 Fed.Appx. 950, 951 (7th Cir. 2016) (Inmates have "a duty under prison rules to keep their cell free of contraband."). Nevertheless, the incident report, together with the investigation photographs and the pharmacist's memorandum clearly satisfy the requirement that the disciplinary decision be based on "some evidence." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (A prison officer's written report alone can fulfill the "some evidence" requirement). Given the evidence before the DHO, the Court cannot say that the disciplinary decision was arbitrary or lacking evidentiary support. Further, Renth has not presented any facts to suggest the outcome of his hearing would have been different if he had reviewed the surveillance video or obtained a toxicology report. The Petition does not indicate that Renth ever identified any of the potential witnesses (that he claims may have been on the videotape), thus he cannot further complain that he was denied the opportunity to call these unidentified people at the hearing.

In addition to finding that there was some evidence to support the DHO's finding, the Court also finds that the sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.3. Renth was found guilty of a 100-level, greatest severity level prohibited

act. Pursuant to 28 C.F.R. § 541.3, disallowing between 50% and 75% (27-41 days) of good conduct time credit available for a year, is an allowable sanction. 28 C.R.F. § 541.3 (Table 1). Therefore, the sanctions imposed by the DHO in this case were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

## Conclusion

For the foregoing reasons, Renth's Petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly and close this case.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 Petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000). If Petitioner wishes to appeal he may file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4. A motion for leave to appeal *in forma pauperis* (IFP) should set forth the issues petitioner plans to present on appeal. Fed. R. App. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. Fed. R. App. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

**SO ORDERED.**

Dated: March 26, 2021

DAVID W. DUGAN
United States District Judge